UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                          Cr. No. 08-20011

Terez Rivers,                              Honorable Sean F. Cox

    Defendant.
_____/

## OPINION & ORDER
## DENYING DEFENDANT RIVERS'S MOTION TO SUPPRESS

Defendant Terez Rivers ("Rivers" or "Defendant") is currently charged in an Indictment with several counts relating to bank robbery, including conspiracy to commit bank robbery, aiding and abetting bank robbery, and using or carrying a firearm in relation to a crime of violence. Trial in this matter is currently scheduled to commence on May 29, 2008. The matter is currently before the Court on Defendant's Motion to Suppress Evidence, wherein he asks the Court to suppress evidence seized from his home during a warrantless search in August, 2007. The parties have briefed the issues and the Court held an evidentiary hearing on April 18, 2008, which, at Defendant's request, was adjourned and then continued on April 24, 2008. For the reasons below, Defendant's motion shall be DENIED.

### BACKGROUND

It is undisputed that on August 25, 2007, officers of the Detroit Police Department searched Rivers's home without a search warrant.

The parties have divergent versions of the underlying facts.

1

In his motion, Rivers asserts that he was asked by the officers to consent to a search of the premises and that he "did not want to consent and only did so after he was coerced into doing so by the officers." (Def.'s Br. at 1). He claims that his consent was not voluntarily given under the circumstances of this case and the search and seizure of his home therefore violated his rights under the Fourth Amendment. On this basis, he asks the Court to suppress all evidence obtained as a result of the search.

The Government alleges that Rivers granted the officers verbal consent to enter.

The Court held an evidentiary hearing on this motion on April 18, 2008. At that time, the Government presented one witness, Raymond Hughes, who was also cross-examined by Defense counsel. The Court then asked Defense counsel if Defendant wished to present any witnesses, and Defense Counsel declined. After further inquiry from the Court, however, Defense Counsel requested that the Court adjourn the evidentiary hearing so that counsel could attempt to locate and interview a potential witness, Vivian Ramsey ("Ramsey"). The Court granted that request and adjourned the hearing until April 24, 2008.

On April 24, 2008, the parties appeared for the continued hearing. At that time, however, Defense Counsel indicated that it did not wish to call Ramsey as a witness, or call any other witnesses, and the hearing concluded after argument by counsel.

For purposes of this motion, the Court makes the following factual findings from the testimony given at the evidentiary hearing.

FINDINGS OF FACT

Raymond Hughes ("Hughes") is a police officer with the Detroit Police Department ("DPD"). He has been employed by the DPD for approximately seven years. He works in a

2

special response unit, which responds to urgent incidents, such as shootings, rapes, and other violent crimes.

On August 25, 2007, Hughes was riding in a vehicle with fellow officers Christopher Reinhard ("Reinhard") and Edward Lawson ("Lawson"). Hughes, Reinhard and Lawson heard a run on the radio, regarding a black male with a weapon who had assaulted a black female. The call advised that the suspect had gotten away from other officers who had responded and that the suspect came out of his shirt at that time.

Hughes, Reinhard and Lawson then responded to the run, and proceeded to the area of Hamilton and Burlingame in Detroit, Michigan, in their vehicle.

Hughes observed a black male, who was not wearing a shirt, running north on Hamilton. Hughes saw that the suspect had his hand on a blue steel automatic hand gun tucked into his waistband area. At that point, Hughes and Lawson began pursuit of the suspect on foot, while Reinhard followed in the vehicle.

Hughes pursued the suspect as he went northbound on Hamilton, then westbound in an alley way between Burlingame and Webb. Hughes then observed the suspect, who was still carrying a hand gun, go southbound between houses and enter a house located at 1150 Burlingame. Hughes was approximately 15 feet behind the suspect.

After the suspect entered the house, other police units began to arrive on the scene. Approximately 10 to 12 officers began to surround the location and secure the perimeter. Hughes approached the front door of the house with Reinhard. The front door had a metal security gate. Hughes, who was wearing a police badge, knocked on the door and announced their presence as police officers. Hughes then heard movement inside the house.

3

After approximately 10 minutes, Rivers came out of the house and onto a second story porch. Rivers asked Hughes and Reinhard what the problem was. Hughes told Rivers that the officers had seen a suspect they were pursuing run into the house carrying a handgun. Rivers told Hughes that no one came into the house and that he had been there the whole time.

Hughes again told Rivers that Hughes had personally seen the suspect enter the house carrying a hand gun.

Rivers then said, "ok, you can come in and check for yourself." Rivers also stated, again, that he had been in the house the whole time and that no one had entered the house.

Rivers came down and opened the door for the officers approximately five minutes later. The officers then entered the house and conducted the search. The officers found the suspect, later identified as Montrice Martin, in the house, hiding in the attic.

ANALYSIS

The Fourth Amendment generally prohibits the warrantless search of a home. *United States v. Hill*, 79 Fed.Appx. 869, 872 (6th Cir. 2003)(citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). If proper consent is voluntarily given, however, a search of property is valid under the Fourth Amendment. *Id.*

Here, Rivers challenges the voluntariness of his consent, asserting that he was "coerced" into giving consent for the search. The Government, on the other hand, contends that Rivers voluntarily gave consent for the search. Thus, the issue before the Court is whether evidence seized during the search should be excluded for lack of valid consent to search.

The parties agree that the Government bears the burden of proving that the consent to search was voluntary under the totality of the circumstances. *United States v. Salvo*, 133 F.3d

943, 953 (6th Cir. 1998). "This burden entails proving by 'clear and positive' testimony that the consent was 'unequivocal, specific, intelligently given and not influenced by any duress or coercion.'" *Id*. (Internal citation omitted).

After presentation of the testimony given at the April 18, 2008 hearing, the Court finds that Hughes's account of the events on the date in question is credible. The Court finds that Hughes was pursuing a suspect carrying a handgun and saw that suspect enter 1150 Burlingame. Hughes then approached 1150 Burlingame without a warrant, knocked on the door and identified himself as a police officer, and then spoke with Rivers. Although Rivers could have refused by simply saying no, the Court finds that during this brief conversation, Rivers freely and voluntarily, without coercion or any threats, knowingly gave the police officers permission to come inside and search the residence.

The Court finds that the Government has clearly met its burden of establishing that the search was voluntary under the totality of the circumstances. As a result, the evidence seized by the officers will not be suppressed.

In addition, assuming *arguendo* that Rivers had not consented to the search, the Court would conclude that exigent circumstances justified a warrantless search under the circumstances presented here.

There are four general categories of exigent circumstances that permit a warrantless entry into a home: 1) hot pursuit of a fleeing felon; 2) imminent destruction of evidence; 3) the need to prevent the suspect's escape; and 4) a risk of danger to the police and others. *United States v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir. 1996). In reviewing alleged exigent circumstances, the court should consider the totality of the circumstances and the "inherent necessities of the

situation at the time." *United States v. Johnson*, 9 F.3d 506, 508 (6th Cir. 1993).

The Government contends that the fourth type of exception (i.e., risk of danger to police or others) applies here because the officers saw the suspect flee into the house with a gun, and the suspect had already displayed a propensity to use the weapon to threaten other people, thus the officers had reason to believe he might threaten them or the occupants of the house and therefore endanger multiple lives.

The Court agrees that this case presents a classic application of the hot pursuit exception because the officers had just been pursuing a suspect who had threatened a woman with a gun, they saw him still carrying the gun, and they chased him into the house. Hughes knew there was at least one occupant in the house because he saw and spoke with Rivers, who indicated he did not believe anyone had entered his house. Hughes had good reason to believe that the suspect may threaten or injure the occupants of the house or officers at the scene. The Court finds that, under the totality of the circumstances presented here, the Government has demonstrated a need for immediate action that would have been defeated if the police officers had taken the time to secure a warrant before entering the house.

## CONCLUSION & ORDER

For the reasons above, IT IS ORDERED that Defendants Rivers's Motion to Suppress is DENIED.

IT IS SO ORDERED.

                                        S/Sean F. Cox
                                        Sean F. Cox
                                        United States District Judge

Dated: April 24, 2008

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                                         Cr. No. 08-20011

D-3 Terez Rivers,                            Honorable Sean F. Cox

    Defendant.
_____/

## **PROOF OF SERVICE**

I hereby certify that a copy of the foregoing *Order Denying Defendant River's Motion to Suppress* was served upon counsel of record on April 24, 2008, by electronic and/or ordinary mail.

                                                           S/J. Hernandez
                                                           Case Manager